**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JERRY L. WALTER, :

              Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant. :

Case No. 3:10-cv-215

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on December 2, 2005, alleging disability from February 2, 1999, due to a heart condition. *See* Tr. 65-69, 79. Plaintiff's application was denied initially and on reconsideration. *See* Tr. 36-42. Administrative Law Judge Daniel R. Shell held a hearing, (Tr. 18-29), following which he determined Plaintiff is not disabled. (Tr. 10-17). The Appeals Council denied Plaintiff's request for review, (Tr. 1-3), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that he met the insured status requirements of the Act through December 31, 2003. (Tr. 12, ¶ 1). Judge Shell also found that Plaintiff has severe coronary artery disease with residuals of surgery, but that he does not have an impairment or combination of impairments that meets or equals the Listings. *Id.* ¶ 3, Tr. 13, ¶

4. Judge Shell found further that Plaintiff has the residual functional capacity to perform work at the light level of exertion in a clean air work environment. (Tr. 13, ¶ 5). Judge Shell then used section 202.13 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 16, ¶ 10). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 17, ¶ 11).

Plaintiff sought emergency room treatment for chest pain on February 6, 1999. (Tr. 126-29). At that time, it was noted that Plaintiff had been admitted to the hospital on January 7, 1999, with chest pain. *Id.* An EKG performed at that time revealed a slower than normal heart rate and no acute ST-T changes. *Id.* Plaintiff was observed overnight and discharged with instructions for outpatient cardiologic followup. *Id.*

On February 16, 1999, Plaintiff sought emergency room treatment for a burning pain across his chest associated with shortness of breath. (Tr. 123-25). An EKG performed at that time revealed no acute ischemia. *Id.* Plaintiff was treated with nitroglycerin which gave him relief for fifteen minutes following which his pain recurred. *Id.* Plaintiff was hospitalized and Dr. Hymon recommended cardiac catheterization studies which revealed significant coronary disease. *Id.* Plaintiff subsequently underwent four-vessel bypass surgery on February 17, 1999. (Tr. 332). Plaintiff subsequently participated in twenty sessions of cardiac rehabilitation during the period March through May, 1999. (Tr. 120-22).

On February 19, 2000, Plaintiff sought emergency department treatment for palpitations and dizziness. (Tr. 330-31). At that time, it was noted that Plaintiff had chronic chest wall pain. *Id.* Plaintiff's diagnosis was identified as vertigo, he was treated with medication, and

he was discharged. *Id.*

Plaintiff was hospitalized from February 2-4, 2004, and underwent a left heart catheterization which revealed abnormal function of the left ventricle, severe triple vessel coronary artery disease with patent bypass grafts, patent graft to the mid LAD and distal circumflex, no-patent graft to the distal RCA, and severe atherosclerosis of the bypass graft. (Tr. 130-54). Plaintiff underwent percutaneous coronary placement of 2 stents. (Tr. 130, 151).

An April 9, 2004, exercise stress gated SPECT myocardial perfusion study revealed normal left ventricular function with an ejection fraction of 64%. (Tr. 411). The interpreting cardiologist concluded it was an abnormal study with a mildly dilated left ventricle and evidence of scarring in the mid anterior wall and globally normal left ventricular function. *Id.* The cardiologist noted that when compared with Plaintiff's previous study of August 18, 2003, "he had only a mild fixed defect in the anterior wall [which was] more severe in the current study", and that his left ventricular function remained normal and unchanged from before. *Id.*

Dr. Hymon noted on April 30, 2004, that Plaintiff had done relatively well, complained of mild chest discomfort with overexertion, and that his angina was stable. (Tr. 379). A May 21, 2004, echocardiogram revealed that Plaintiff had good left ventricular function with an ejection fraction of 60%, his right ventricle was in the upper limits of normal size, he had mild insufficiency of mitral, tricuspid, and pulmonic valves, and that he had normal pulmonary artery pressure. (Tr. 410). In June 2004, Dr. Hymon reported that Plaintiff's angina continued to be relatively stable and that he was generally active, (Tr. 377-78), and in September 2004, Dr. Hymon reported Plaintiff had done quite well from a cardiac perspective, was exercising in cardiac rehab three times a week, and that he had stable angina. (Tr. 376). In October 2004 Dr. Hymon noted that

5

Plaintiff was active, had no chest pain, had no exertional symptoms, and that his angina was stable. (Tr. 375).

Plaintiff was hospitalized in March, 2005, with unstable angina. (Tr. 155-98, 374). Plaintiff underwent another cardiac catheterization and had another stent inserted. *Id.*

Plaintiff underwent left heart catheterization on January 23, 2006, which revealed moderate left ventricle dysfunction. (Tr. 199-210).

On January 21, 2008, Dr. Hymon reported that Plaintiff had been under his care and the care of his colleagues since January 8, 1999, underwent four-vessel bypass surgery on February 17, 1999, and initially did well following his surgery. (Tr. 332). Dr. Hymon also reported that in February 2000, Plaintiff again began to develop shoulder and back pain, followed by intermittent symptoms, that in January 2001, Plaintiff started to have chest discomfort, and that in 2003, he continued to have episodes of chest pain. *Id.* Dr. Hymon reported further that Plaintiff had a non-ST-elevation myocardial infarction in February 2004, when he underwent a stent placement, that he continued to have symptoms, and that in 2005 he underwent another catheterization. *Id.* Dr. Hymon noted that, by that point, due to a "lack of appropriate surgical or interventional cure of his discomfort, it was felt that any further attempt at employment would be dangerous." *Id.* Dr. Hymon opined that Plaintiff had well-documented significant coronary disease with progressively severe angina which started in 2002 and because that of his coronary disease he was advised not to work and was totally disabled. *Id.* Dr. Hymon also opined that Plaintiff could stand for twenty minutes at a time, walk for five minutes at a time, and sit for two hours for a total of an eight hour day and work situation. (Tr. 333-37). Dr. Hyman reported that Plaintiff was unable to lift, push, or pull, but able to use his hands for simple grasping and fine manipulation, and able to reach above shoulder

level. *Id.* Dr. Hymon reported further that Plaintiff would not be able to bend, squat, crawl, climb steps or ladders. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by failing to properly evaluate the opinion of his treating cardiologist, Dr. Hymon. (Doc. 8). Plaintiff further argues that the Commissioner erred by not finding him disabled pursuant to the Grid. *Id.*

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders

opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07*,citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

---

and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

The record establishes that Dr. Hymon has been Plaintiff's long-term treating cardiologist—he has been treating him since 1999. Plaintiff has undergone of a 4-way coronary artery bypass graft surgery and two subsequent stent placements which Dr. Hymon or another cardiologists in his practice performed and which are related to his long-standing coronary disease.

Judge Shell noted that Dr. Hymon opined in January, 2008, that Plaintiff was permanently and totally disabled. (Tr. 15). However, Judge Shell declined to give this opinion controlling or even deferential weight on the incorrect basis that Dr. Hymon's first contact with the Plaintiff was not until February 2, 2004. *Id.* Judge Shell also determined that Dr. Hymon's opinion was not supported by the objective and clinical findings documenting Plaintiff's cardiac status through his date last insured. *Id.*

In support of Dr. Hymon's opinion prior to Plaintiff's date last insured, he noted that Plaintiff underwent a coronary artery bypass in 1999. Plaintiff recovered normally; however, the record establishes that he experienced a worsening of his condition. Plaintiff underwent stent placements in 2003 and 2004, underwent multiple heart catheterizations, and suffered a heart attack in 2003. Although Dr. Hymon indeed opined that Plaintiff was "permanently and totally disabled",

he also described Plaintiff's functional limitations. *See,* Tr. 333-37. However, Judge Shell failed to consider those factors when he determined that Dr. Hymon's opinion was not entitled to controlling or even deferential weight.

Even assuming that Dr. Hymon's opinion was not entitled to controlling weight, Judge Shell failed to provide an analysis as to whether it was entitled to deferential weight. Specifically, while Judge Shell recited the regulatory standard for determining whether a physician's opinion is entitled to deferential weight, he failed to provide an analysis under that standard. (Tr. 13-15).

This Court concludes that the Commissioner failed to properly evaluate long-term treating physician Dr. Hymon's opinion. Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v.*

*Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the factual issues have been resolved and that the record does not adequately establish Plaintiff's entitlement to benefits. Specifically, the Court notes that while the Commissioner failed to properly evaluate Dr. Hymon's opinion, there may be adequate bases for the Commissioner to reject that opinion. That is, of course, the Commissioner's function and is not the function of this Court.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed.  It is also recommended that this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report.  Finally, it is noted that this is a Fourth Sentence remand and it is therefore recommended that judgment be entered in favor of Plaintiff and against the Commissioner and that this matter be terminated on the Court's docket.

March 7, 2011.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it

as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).